```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
TAMMY T. SANDERS o/b/o A.D.S.,

                      Plaintiff,         13-CV-0270(MAT)

       v.                                **DECISION
                                         and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,

                      Defendant.
_____
```

## I.  Introduction

Represented by counsel, Tammy T. Sanders ("plaintiff") has brought this action on behalf of her infant daughter ("A.D.S.") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying AERS's application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural History

The record reveals that on August 18, 2008, plaintiff filed an application for SSI benefits on behalf of A.D.S. (d/o/b June 24, 1995), alleging disability as of September 1, 2007. Plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 27, 2011, before ALJ Theodore Kennedy. The ALJ issued an unfavorable decision on August 2, 2011. T. 76-93. On August 25, 2011, plaintiff requested review of the hearing decision, which request was denied by the Appeals Council on January 17, 2013. Thereafter, on

March 14, 2013, plaintiff timely filed this action seeking review of that denial. Doc. 1.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the Commissioner's motion is granted, and plaintiff's cross-motion is denied.

### III. Summary of Administrative Transcript

#### A.   Plaintiff's Reports

In a "Function Report" completed on September 27, 2008, plaintiff indicated that A.D.S. had no problems seeing or hearing, but that her problems communicating included trouble answering the phone, delivering messages, and using certain phrasing in sentences. T. 150-52. Plaintiff indicated, however, that A.D.S. had no issues repeating stories she had heard, explaining why she did something, asking for what she needs, or talking with family or friends. Id. at 152. Plaintiff reported that A.D.S.'s only problem understanding and using learned information was in reading and understanding sentences in comics and cartoons. Id. at 153. Plaintiff reported that, because A.D.S. was 13 years old and weighed 231 pounds, every physical activity was limited. Id. Plaintiff also stated that A.D.S.'s impairments affected her social activities by limiting her ability to make and keep friends her own age. Id. at 154. However, plaintiff reported that A.D.S. was able to generally get along with family, friends, teachers, and peers in

team sports. Id. Plaintiff indicated that A.D.S. was limited in taking care of her personal needs in every area (e.g., personal hygiene, studying, taking necessary medication, etc.) because A.D.S. "can not concentrate, will not study on her own, will not take medications and anything else with a deadline." Id. at 155. Finally, plaintiff indicated that A.D.S. was limited in paying attention and sticking with tasks (e.g., arts and crafts projects, completing homework on time, and finishing chores), because she could not follow directions. Id. at 156.

In a "Disability Report" dated March 25, 2010, plaintiff indicated that A.D.S. could read, understand, and speak English. Id. at 161. Plaintiff reported that A.D.S. suffered from learning disability, anger, forgetfulness, and that she fought with siblings and peers at school. Id. at 162. In a separate description of activities completed April 15, 2010, plaintiff again reported that A.D.S. had no issues seeing, hearing, or talking, and plaintiff stated that A.D.S. had no problems with self-care activities such as using the restroom, washing, feeding, etc. Id. at 204-05. The only issues plaintiff reported with A.D.S.'s activities were that A.D.S. had imaginary friends, was mean to her actual friends, was shy, was scared to get on the bus "some days," and that she had discipline problems at school and the school "call[ed] [plaintiff] a lot." Id. at 206.

**B.   Education Records**

In May-June of 2007, school psychologist Chithra Kandaswami assessed A.D.S.'s cognitive skills as average for her age, but as delayed in visual-motor integration skills. T. 296. Reading, math, and written expression skills were significantly delayed; however, Kandaswami noted that A.D.S. initially was defiant and uncooperative during testing sessions, but this behavior improved after A.D.S.'s mother became aware of the non-cooperation. Id. at 294-96. A.D.S.'s individualized education program ("IEP") for 2009-2010 identified her as below district standards in reading, language arts, and math, but noted that her reading and writing skills were improving. Id. at 346. Her 2010-2011 IEP indicated that reading and writing skills continued to improve, but that A.D.S. required a structured environment as she had a tendency to become confrontational with teachers. Id. at 251-52. A.D.S.'s 2012-2011 IEP noted that A.D.S. was a strong reader and speller, got along with peers, and "[had] many friends." Id. at 311-12. The IEP stated that "A.D.S. has a great deal of ability and could do much better than she is doing now." Id. at 313. Her physical "levels and abilities" were within age appropriate expectations. The IEP noted that A.D.S. needed improvement in math, reading comprehension, and following school and classroom rules. Id.

Special education teacher Andrea Merino submitted two teacher questionnaires. T. 168-79 (dated May 6, 2010), 196-202 (dated June 18, 2010). Merino began teaching A.D.S. in September of 2009,

4

and taught all her academic subjects, two to five days per week for the 2009-2010 academic year. Id. at 169, 196. Merino reported that A.D.S. had a "serious" or "very serious" problem in ten listed ares of the domain of acquiring and using information, including comprehending oral instructions, understanding vocabulary, reading comprehension, comprehending and completing math problems, expressing ideas and recalling previously learned material, and the like. Id. at 170, 197. According to Merino, A.D.S. "require[d] teacher assistance to perform in the classroom." Id. at 170. Merino also reported problems attending and completing tasks, but her ratings on the 13 areas of this domain ranged from "no problem" to "a very serious problem." Id. at 171, 198. Although Merino did not elucidate in commentary, she rated A.D.S. as having no problem or only a slight problem in areas such as paying attention when spoken to directly, maintaining attention during play or sports, focusing long enough to finish tasks, and refocusing to finish a task, but rated A.D.S. as having a "serious" or "very serious" problem related to tasks such as completing homework assignments and carrying out instructions. Id. at 198. Merino's ratings in the domain of interacting and relating with others reflected problems keeping and maintaining friends and expressing anger appropriately; she noted that A.D.S.'s "behavior plan" was "to limit times arguing with peers." Id. at 199. Merino also related "serious" or "very serious" problems within the domain of caring for herself, noting that A.D.S. had "eating issues" and "obesity." Id. at 174, 200.

Under the domain of medical conditions and medications/health and physical well-being, Merino reported that A.D.S. had been "absent for frequent illness," but did not state what this illness was. Id. at 201. Merino further noted that A.D.S. had "poor self esteem" and "[would] not participate in academic activities due to size from obesity issues." Id. at 201. However, Merino did not indicate that A.D.S. was *unable* to participate in these activities due to obesity.

School psychologist Bonnie Kane reported on January 21, 2010 that A.D.S.'s cognitive skills were within the low average to borderline range, and noted that "some of [A.D.S.'s] scores may have been negatively impacted by low motivation." Id. at 262. An Intervention Status Report for the 2009-2010 school year reflected progress in the areas of organizational skills, study skills, and assignment completion. Id. at 212.

### C. Medical Evidence

Office treatment records from Summit Pediatrics, dated 2007 through 2009, diagnosed A.D.S. with episodic ailments including abdominal pain and cramping, obesity, a "behavioral problem," gastric reflux, and headaches. T. 322-25, 358-71. In November 2007, neurologist Michael E. Cohen evaluated A.D.S.'s overall neurological status as unremarkable. Id. at 394. The medical records do not reflect any diagnosis or treatment of attention deficit hyperactivity disorder ("ADHD") or oppositional defiant disorder ("ODD"). Additionally, as the ALJ noted, no record

6

evidence indicates that A.D.S. took any medication for the treatment of ADHD during the time period relevant to this claim. T. 86. Indeed, there is no evidence that A.D.S. took any medications on a regular basis.

A childhood disability evaluation form, completed by Dr. J. Meyer on May 25, 2010 and given great weight by the ALJ, reviewed A.D.S.'s medical record and determined that A.D.S.'s impairment or combination of impairments was severe, but did not meet, medically equal, or functionally equal the listings. Id. at 332. More specifically, Dr. Meyer found that A.D.S. had less than marked limitations in all domains of functioning except moving about and manipulating objects and health and physical well-being, in which domains Dr. Meyer found that A.D.S. had no limitations. Id. at 334-35.

A May 11, 2010 evaluation completed by psychologist Gregory Fabiano, Ph.D., which was given some weight by the ALJ, concluded that A.D.S.'s examination results were "consistent with psychiatric problems, but in itself, this [did] not appear to be significant enough to interfere with [her] ability to function on a daily basis." Id. at 330. Dr. Fabiano diagnosed A.D.S. with ADHD, combined type, learning disorder, not otherwise specified, and ODD. Id. at 331.

### D. **Testimonial Evidence**

At the video hearing held on July 27, 2011, plaintiff and A.D.S. testified; no medical testimony was presented. T. 49-72.

Plaintiff testified that A.D.S. was in 9th grade and attending high school special education classes. Id. at 54-55. According to plaintiff, A.D.S. weighed 280 pounds, and had gained weight. Id. at 54. Plaintiff testified that A.D.S. could see, hear, and talk without issue. Id. at 55. Plaintiff indicated issues with reading comprehension, but reported that A.D.S. could read and write in English, and could read, write, and understand simple stories. Id. at 55-56.

A.D.S. testified that she could perform communication tasks such as answer the phone, deliver messages, express and explain her opinions, and express her anger; however, she stated that she could not understand oral instructions, communicate complete thoughts, or speak in an easily understood manner. T. 57-58, 62. The Court notes that the transcript of the hearing reflects that A.D.S.'s responses were appropriate to the questions posed and aptly communicated. Regarding completion of tasks, A.D.S. testified that she could watch an entire television show or movie without being distracted, and that she could pay attention during group sports, reading alone, and completing chores, but that she could not complete games or puzzles, and could not complete school or work tasks without making careless mistakes. Id. at 59-60. She testified that she had a best friend and that she enjoyed playing basketball with peers, but that she did not make or keep new friends easily. Id. at 60-61. A.D.S. also testified that she failed classes in school because she was frequently absent from class, instead spending time in the

bathroom or roaming the halls. Id. She testified that she had gotten in trouble at school for fighting and for excessive absences, which totaled 30 in the previous school year. Id.

**IV. Applicable Law**

   **A.   Standard of Review**

The Commissioner's decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); see also, e.g., Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The reviewing court must carefully consider the entire record, examining evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (quoting Quinones v. Chater, 117 F.3d 29, 33 (2d Cir. 1997) (quoting Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)). Nevertheless, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of

the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

This deferential standard is not applied to the Commissioner's conclusions of law, however. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984); see also, e.g., Tejada, 167 F.3d at 773. This Court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Id.

**B.   Legal Standard for Disability Claims of Children**

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Pursuant to this statutory dictate, the Social Security Administration has promulgated, by regulation, a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability. Encarnacion ex rel. George v. Astrue, 586 F.3d 72, 75 (2d Cir.2009) (citing 20 C.F.R. § 416.924 et seq.). Under this analysis, the plaintiff must show that: (1) the child was not engaged in substantial gainful activity; (2) the child had a "severe" impairment or combination of impairments; and (3) the child's impairment(s) met, medically equaled, or functionally equaled the severity of a listed impairment. 20 C.F.R. § 416.924.

At the third step, "[f]or a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" Encarnacion, 568 F.3d at 75 (quoting 20 C.F.R. § 416 .926a(a)). A child's limitations are evaluated in the context of the following six domains of functioning:

        (1) acquiring and using information;
        (2) attending and completing tasks;
        (3) interacting and relating with others;
        (4) moving about and manipulating objects;
        (5) caring for oneself; and
        (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

**V.   The ALJ's Decision**

The Commissioner does not dispute the ALJ's finding that A.D.S. was not engaged in substantial gainful activity under the first step of the evaluation process. Doc. 16-1, at 13. Thus, the relevant inquiries for this case relate to the second step, which assesses whether A.D.S. has a "severe" impairment or combination of impairments, and the third step, which assesses whether her impairment(s) met, medically equaled, or functionally equaled the severity of a listed impairment.

The ALJ found that A.D.S. suffered from three severe impairments: ADHD, ODD, and a learning disorder (not otherwise specified). T. 82 (citing 20 C.F.R. § 416.924(c)). At the third step, however, the ALJ found that A.D.S. did not suffer from an impairment or combination of impairments that met or medically

11

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, 416.926). T. 82. More specifically, the ALJ found that, regarding A.D.S.'s ADHD, the evidence did not show that A.D.S. exhibited marked impulsiveness or marked hyperactivity as required by the listing. Id.; see 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.11. Regarding A.D.S.'s ODD, the ALJ found that although the evidence indicated that A.D.S. had significant difficulties relating with both peers and adults, her conduct, as documented by school records and as observed by the ALJ during the hearing, did not satisfy the criteria of "at least two of the appropriate age-group criteria in paragraph B2 of 112.02." T. 82.

The ALJ then proceeded to consider whether A.D.S. had an impairment or combination of impairments that functionally equaled the severity of the listings. T. 82-90. The ALJ accordingly evaluated A.D.S.'s functioning in the six domains set out in 20 C.F.R. § 416.926a(b)(1). After a thorough evaluation of all six domains, the ALJ determined that A.D.S. did not have an impairment, or combination of impairments, that functionally equaled the severity of the listings. T. 84-90.

**VI. Discussion**

Plaintiff contends that (1) the ALJ failed to properly evaluate A.D.S.'s teacher's opinions; (2) the ALJ used an incorrect legal standard in evaluating the domain of acquiring and using information; (3) the ALJ made no credibility findings; and (4) the

ALJ did not properly consider the effects of A.D.S.'s obesity. Doc. 19.

### A. The ALJ's Consideration of Teacher Opinions

Plaintiff contends that the ALJ did not properly consider the opinions of A.D.S.'s special education teacher, Andrea Merino. Doc. 19 at 9-11. As described above, Merino completed two evaluations at the end of the 2009-2010 school year. T. 168-79, 196-202. Although Merino's evaluations contained numerous assessments that A.D.S. had "serious" or "very serious" problems in areas listed in the form as relating to the six domains of functioning, Merino's opinions, when considered alongside the entirety of the evidence in the record, do not frustrate the ALJ's conclusion that, in the domains particularly relevant to school functioning (i.e., acquiring and using information, attending and completing tasks, and interacting and relating with others), A.D.S. suffered from less than marked impairments that were not likely due to any relevant impairments.

The ALJ's opinion reflects consideration of the entire record, including Merino's opinions, in reaching conclusions regarding all domains of A.D.S.'s functioning. Contrary to plaintiff's contention, the ALJ did reference Merino's opinion once, in noting that Merino suggested that A.D.S.'s obesity affected her self esteem. Id. at 87. It is thus clear that the ALJ did review Merino's opinions. In any event, the ALJ's opinion establishes that he considered school records, where relevant, in determining

A.D.S.'s levels of functioning. See id. at 85 (in considering acquiring and using information, citing and school records reflecting excessive absence and IEP reports indicating that A.D.S. could perform "fairly well when she is feeling motivated and receives adequate encouragement"), 87 (in assessing interacting and relating with others, citing school records, including an IEP report relating that A.D.S. had a "poor attitude and work ethic [which] interfere[d] with classroom performance"). The bulk of the educational records, especially the IEP reports, supports the ALJ's overall determination that A.D.S.'s issues with performance and conduct at school were not due to mental or physical impairments, but rather to lack of motivation, attitude, and/or self esteem issues. It should also be noted that Merino's own opinions support the conclusion that many of A.D.S.'s problems with school related to attitude and motivational issues: she rated A.D.S. as having no problem or only a slight problem in areas such as paying attention when spoken to directly, maintaining attention during play or sports, focusing long enough to finish tasks, and refocusing to finish a task, but rated A.D.S. as having a "serious" or "very serious" problem related to tasks such as completing homework assignments and carrying out instructions. Id. at 198. Her ratings in the domain of interacting and relating with others reflected problems keeping and maintaining friends and expressing anger appropriately; she noted that A.D.S.'s "behavior plan" was "to limit times arguing with peers." Id. at 199. These ratings are

consistent with the overall evidence in the record, which does not reveal any underlying mental or physical impairment as a basis for any of A.D.S.'s performance issues at school. The medical records do not reflect any diagnosis or treatment of ADHD or ODD, nor do they reveal evidence of physical limitations as a result of plaintiff's obesity. Id. at 322-25, 358-71. Indeed, as the ALJ noted, the only evidence that obesity had any significant effect on A.D.S.'s functioning was plaintiff's attorney's conclusion, and Merino's, suggestion that bullying from peers regarding obesity, and ensuing self-consciousness, affected A.D.S.'s willingness to attend class or engage in other activities. Id. at 87.

Moreover, Merino is not a doctor nor is she an expert in the legal standards necessary to establish limitations in any specific domain, and the ALJ was entitled to give greater weight to Dr. Meyer's opinions included in the Childhood Disability Evaluation Form. Dr. Meyer concluded, after a thorough evaluation, that A.D.S. did not suffer from marked limitations in any domain. Id. at 332-37. As the ALJ noted, Dr. Meyer's opinions were "consistent with the overall evidence in the record, and they were formulated by a licensed pediatrician with a sound working knowledge of both the claimant's medical record and the applicable SSI criteria." Id. at 84.

In summary, the ALJ's opinion does reflect that he gave adequate consideration to Merino's opinions in light of all of the record evidence, including numerous school documents.

**B.   The ALJ's Evaluation of Acquiring and Using Information**

Plaintiff contends that the ALJ used an incorrect legal standard in evaluating the domain of acquiring and using information. Doc. 19 at 11-13. However, the ALJ relied upon the appropriate legal standard, with specificity, when considering this domain. T. 84-85 (citing 20 C.F.R. §§ 416.926a(g); SSR 09-3p). The ALJ considered the record evidence relating to this domain, including educational records showing that A.D.S.'s "skills in multiple core academic areas are several grade levels short of what would be age-appropriate," but that her full IQ scale of 87 placed her "squarely in the low average range." Id. at 85. The ALJ also considered IEP reports which "indicate[d] that claimant is capable of performing fairly well when she is feeling motivated and receives adequate encouragement." Id. The ALJ noted that according to school records and by A.D.S.'s own admission, she had established a pattern of excessive absences from class, thus creating a further explanation for poor performance in school unrelated to any alleged impairment(s). Id. Based on this evidence, the ALJ concluded that there was a "possibility that [A.D.S.'s] poor academic achievement is attributable in significant part to a lack of motivation rather than an organic disability." Id. This conclusion is supported by substantial evidence in the record.

Although the Court acknowledges plaintiff's argument that a child does not necessarily have to possess an "organic" disorder to be considered limited in this domain of functioning, the evidence

nevertheless fully supports the ALJ's finding that A.D.S.'s limitation in this domain was less than marked, and that his opinion reflects that he considered this domain under the proper legal standard. The Court is thus required to give deference to this finding by the ALJ.

### C.  Credibility

Plaintiff contends that the ALJ's credibility determination is insufficient, arguing that the ALJ did not acknowledge certain statements made during the hearing, and "did not make any finding as to whether he found their statements to be credible as required." Doc. 19 at 13-15.

Throughout his opinion, the ALJ considered the testimony of both A.D.S. and plaintiff, most often actually crediting their statements regarding A.D.S.'s relative abilities and limitations. Id. at 85 (noting A.D.S.'s admission of excessive absences), 87 (noting A.D.S.'s testimony that she was able to make friends with some peers and enjoyed team sports with peers), 88 (noting that both plaintiff and A.D.S. testified that A.D.S. had no limitations in the area of moving about and manipulating objects), 89 (noting that hearing testimony indicated that A.D.S. was able to perform basic self-care tasks, such as grooming), 90 (noting that A.D.S. did not aver that she experienced any "significant or uncommon problems with her physical health").

Additionally, at the outset of the ALJ's discussion of the record and consideration of the six relevant domains, the ALJ

cited, among other sources, 20 C.F.R. § 416.929 and SSR 96-7p. Id. at 83. He went on to state that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." Id. The ALJ then stated that "[f]or the reasons stated in detail below, although the claimant does appear to have 'less than marked' limitations in several of the six functional equivalence domains, these limitations do not rise to the level of 'marked' impairment." Id. The subsequent discussion, which includes references to testimony as outlined above, indicates that the ALJ used the proper standard in assessing credibility, especially in light of the fact that the ALJ cited relevant authorities in that regard. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir.2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); Judelsohn v. Astrue, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record."). Moreover, review of the record fully supports the conclusion that the ALJ properly assessed plaintiff's

18

and A.D.S.'s credibility in accordance with the applicable legal authority.

### D.   The ALJ's Consideration of A.D.S.'s Obesity

Plaintiff contends that the ALJ did not give proper consideration to the effects of A.D.S.'s obesity. Doc. 19 at 15-16. However, the record reveals that the ALJ did consider A.D.S.'s obesity in conjunction with all of her medically determinable impairments (see 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c)), and substantial evidence supports his conclusion that the only effect of obesity on A.D.S.'s daily functioning was in affecting her self esteem and thus perhaps derivatively influencing her involvement in activities.

Although A.D.S.'s teacher, Ms. Merino, noted that plaintiff was limited in mobility because of obesity (T. 173), and plaintiff alleged this as well (T. 153), A.D.S.'s medical records contain no evidence that obesity affected A.D.S.'s functioning. Medical records described A.D.S. as obese or overweight, but examination revealed no abnormalities in gait or station (<u>id.</u> at 329, 366), her physical abilities were assessed as within age-appropriate expectations (<u>id.</u> at 346), and a neurologist described her as "somewhat heavy" and noted that this may affect her self-image, but did not note any resulting physical or serious mental impairments. <u>Id.</u> at 395. Thus, the ALJ properly considered the effects of A.D.S.'s obesity.

19

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 16) is granted, and plaintiff's cross-motion (Doc. 17) is denied. The ALJ's finding that A.D.S. was not disabled during the relevant period is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         July 20, 2015